FILED

2017 May-11  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PHILLIP McGEE, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:16-cv-02082-JHE |
| | § | |
| ELI LILLY AND COMPANY, and | § | |
| BOEHRINGER INGELHEIM | § | |
| PHARMACEUTICALS, INC. | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANT BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") submits this Motion to Dismiss Plaintiff's Complaint [D.E. 1] for failure to state a claim upon which relief can be granted.

### INTRODUCTION

This case arises out of Plaintiff Phillip McGee Sr.'s alleged development of diabetic ketoacidosis ("DKA"), which he attributes to his use of Jardiance. Jardiance is a prescription medication that belongs to the class of drugs known as sodium-

1

glucose cotransporter-2 ("SGLT2") inhibitors.  Jardiance was approved by the U.S. Food and Drug Administration ("FDA") as safe and effective for the treatment of type 2 diabetes.  BIPI holds the New Drug Application for Jardiance, and BIPI and Eli Lilly and Company ("Lilly") co-market Jardiance.[1]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff's Complaint falls woefully short of this standard, failing to plead facts about BIPI's role with respect to Jardiance and, instead, pleading general, conclusory allegations regarding BIPI's conduct.  That Plaintiff's Complaint is devoid of the specificity required by the Federal Rules is unsurprising. It appears to have been copied nearly verbatim from another complaint related to a different SGLT2 inhibitor, Invokana, substituting party and drug names, but not adding much, if anything, else.  *See Fleming v. Janssen Pharm., Inc.*, No. 2:15-CV-02799-JPM-dkv (W.D. Tenn. 2016) [D.E. 1].  That complaint, deemed by the Western District of Tennessee to consist "largely of legal conclusions" and "unadorned, the defendant-unlawfully-harmed-me accusation[s]," was dismissed approximately one year ago.  *Fleming v. Janssen Pharm., Inc.*, 186 F. Supp. 3d 826,

---

[1] Plaintiff has not served Lilly with the Complaint, and the Parties are discussing Lilly's voluntary dismissal.

835-36 (W.D. Tenn. 2016); *see also House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-00894-JHM, 2017 WL 55876, at *4 (W.D. Ky. Jan. 4, 2017) (likewise dismissing complaint involving a different SGLT2 inhibitor, Farxiga, where, "[j]ust as in *Fleming*," plaintiff's "nearly identical" claims were insufficiently pled). Plaintiff's Complaint should meet a similar fate.

## BACKGROUND

Diabetes is a serious healthcare epidemic in the United States and worldwide, characterized by uncontrolled blood glucose (sugar) levels. Jardiance (*empagliflozin*) was approved by the FDA on August 1, 2014 as safe and effective for the treatment of type 2 diabetes.[2]  Compl. ¶ 16.  It is the third member of the newest class of medications used to treat type 2 diabetes known as SGLT2 inhibitors. *Id*.  SGLT2 inhibitors provide a novel mechanism for lowering glucose levels.  *Id*. ¶¶ 17-18.

Plaintiff alleges that he was prescribed and began taking Jardiance to treat his diabetes "in or about January 2015."  *Id*. ¶ 27.  Approximately one month after beginning treatment with Jardiance, Plaintiff allegedly experienced "diabetic ketoacidosis on or about February 2015."  *Id*. ¶ 32.[3]  Plaintiff filed his Complaint on

---

[2] Plaintiff incorrectly alleges that "[o]n August 1, 2014, the FDA approved JARDIANCE (dapagliflozin)."  Compl. ¶ 16.  Empagliflozin (trade name Jardiance) is the drug at issue in this case—not dapagliflozin (trade name Farxiga)—a different SGLT2 inhibitor medication.

[3] DKA is a complex condition that occurs when insulin levels become dangerously low and the body is unable to create enough energy from glucose.

December 29, 2016, asserting claims for (1) products liability – failure to warn (strict liability); (2) violations of the Alabama Extended Manufacturers' Liability Doctrine; (3) negligence; and (4) willful and wanton conduct or gross negligence.  Plaintiff asserts each of these four claims against BIPI and Lilly based on their alleged roles in the research, development, design, licensing, manufacture, distribution, supply, marketing, and sale of Jardiance.  *See id*. ¶¶ 1, 8-9.

Plaintiff's Complaint does not provide any factual statements about Plaintiff's diabetes, other diabetes medication use, or his alleged development of DKA, and fails to allege how Jardiance caused his DKA to occur.  The Complaint is also rife with other unsupported allegations.  Plaintiff alleges that he experienced "severe and permanent physical and emotional injuries . . . pain and suffering, emotional distress, loss of enjoyment of life, and economic loss, including significant expenses for medical care and treatment which will continue in the future" and "other related health complications."  *Id.* ¶¶ 45, 67-68, 90, 116-117.  Plaintiff also alleges that Jardiance causes "stroke, heart attack, [and] severe kidney damage," but nowhere does he claim that he actually developed or experienced any of these conditions.  *Id.* ¶ 3.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allain v. Wyeth Pharm., Inc.*, No. 2:14-CV-00280-KOB, 2015 WL 178038, at *1 (N.D. Ala. Jan. 14, 2015) (alteration in original). Plausibility requires allegations showing more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, and unadorned, the-defendant-unlawfully-harmed-me accusation[s], cannot withstand a motion to dismiss." *Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (*per curiam*), *cert. denied*, 136 S. Ct. 1495 (2016) (internal quotation marks omitted).

## I.   ALABAMA DOES NOT RECOGNIZE CLAIMS FOR STRICT LIABILITY, REQUIRING DISMISSAL OF COUNT I.

As a preliminary matter, Plaintiff's "strict liability" failure-to-warn count (Count I) fails to state a claim under Alabama law because Alabama does not

recognize a strict liability cause of action.  Instead, Alabama has a judicially-created substitute for strict liability, the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD"), violations of which Plaintiff asserts in Count II.  *See Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976) ("Under the 'extended manufacturer's liability doctrine,' we opine that a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a Matter of law."); *see also Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976).  The AEMLD modifies traditional strict liability, rejecting the no-fault concept of liability by permitting affirmative defenses and incorporating "nods to negligence theory."  *Foster v. Bridgestone Americas, Inc.*, No. 11-0175-WS-N, 2013 WL 489162, at *2, *3-4 (S.D. Ala. Feb. 8, 2013) (rejecting plaintiff's contention that a standalone common law strict liability cause of action exists in Alabama); *see also Batchelor v. Pfizer, Inc.*, No. 2:12-cv-908-WKW, 2013 WL 3873242, at *2 (M.D. Ala. July 25, 2013) ("Alabama has not adopted a no-fault concept of products liability and has instead retained a fault-based system known as the [AEMLD].").  Thus, to the extent that Plaintiff intends to assert common-law claims for strict liability in Count I, those claims should be dismissed, as no such cause of action exists under Alabama law.  *See, e.g., Foster*, 2013 WL 489162, at *4 (dismissing strict liability claim under Alabama law).  Even if the Court construes Plaintiff's strict liability claims as claims

arising under the AEMLD (Count II), the Court should dismiss all such claims as insufficiently pled for the reasons stated below.

## II.   Plaintiff's Remaining Claims Do Not Satisfy Federal Pleading Requirements And Should Be Dismissed (Counts II-IV).

Plaintiff's remaining AEMLD, negligence, and willful and wanton conduct or gross negligence claims (Counts II-IV) should be dismissed for failure to allege sufficient facts in accordance with federal pleading requirements under Fed. R. Civ. P. 8(a) and *Twombly/Iqbal*.

### a.   Plaintiff Has Not Stated A Claim Under The AEMLD (Count II).

To establish liability under the AEMLD, a plaintiff must show "(1) he suffered injury or damages to himself or his property by one who [sold] a product in a defective condition unreasonably dangerous to the plaintiff, as the ultimate user or consumer, if (a) the seller [was] engaged in the business of selling such a product, and (b) it [was] expected to and [did], reach the user or consumer without substantial change in the condition in which it [was] sold." *Bodie v. Purdue Pharma Co.*, 236 F. App'x 511, 518 (11th Cir. 2007); *accord Miller v. Pfizer Inc.*, No. 4:13-CV-01687-KOB, 2014 WL 2155020, at *2 (N.D. Ala. May 22, 2014).  The Alabama Supreme Court has stated that, for AEMLD cases involving prescription drugs like Jardiance, "'the adequacy of [a drug's] accompanying warning determines whether the drug, as marketed is defective, or unreasonably dangerous.'"  *Bodie*, 236 F. App'x at 518 (quoting *Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984)).

7

That is, "no AEMLD design defect claim for prescription drugs exists apart from a challenge to the adequacy of the warning." *Barcal v. EMD Serono, Inc.*, No. 5:14-CV-01709-MHH, 2016 WL 1086028, at *3 (N.D. Ala. Mar. 21, 2016).

To prevail on a failure-to-warn claim, a plaintiff must prove that (1) the manufacturer failed to provide his prescribing physician with adequate warnings about risks of which it knew or should have known, and (2) the inadequate warning proximately caused his injuries. *See, e.g.*,

*Bodie*, 236 F. App'x at 518 (citing *Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 883 (Ala. 2004)); *see also Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1269 (N.D. Ala. 2007). Plaintiff cannot state a failure-to-warn claim under the AEMLD for several reasons.

*First*, Plaintiff alleges that Jardiance was defective and/or unreasonably dangerous because Defendants "failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries" and "failed to accompany their product with proper or adequate warnings or labeling regarding adverse side effects and health risks." Compl. ¶¶ 62(a), (c). Such conclusory statements, however, do not identify the inadequate warnings or how such warnings were unreasonably dangerous and/or defective, requiring dismissal of the claims. *See, e.g.*, *Bailey v. Janssen Pharms., Inc.*, 288 F. App'x 597, 608-09 (11th Cir. 2008) (*per curiam*) (finding allegation that "[t]he defective [drugs] were not accompanied

by adequate instructions and/or warnings to fully apprise the prescribing physicians . . . of the full nature or extent of the risks and side effects associated with its use" failed to state a claim, because "[n]owhere does the complaint recite the contents of the warning label or the information available to [plaintiff's] physician or otherwise describe the manner in which the warning was inadequate"); *see also Miller*, 2014 WL 2155020, at *3 (following *Bailey* and dismissing failure-to-warn claims under AEMLD because, although "the complaint briefly mentions that the warnings were inadequate, it does not explain *why* they were inadequate") (emphasis added).

Moreover, the sufficiency of Plaintiff's allegations has already been rejected by two other federal courts in cases involving other SGLT2 inhibitors.  Here, Plaintiff alleges that "JARDIANCE contained warnings insufficient to alert consumers, including Plaintiff, to the dangerous risks and reactions associated with JARDIANCE, including the development of Plaintiff's injuries," Compl. ¶ 75.  That allegation, however, is nearly identical to (and likely copied from) the factually deficient complaint in *Fleming*.  *See* 186 F. Supp. 3d at 836 (finding allegations, such as "INVOKANA contained warnings insufficient to alert consumers, including Plaintiff, to the dangerous risks and reactions associated with INVOKANA, including the development of Plaintiff's injuries," amounted to "only conclusory statements as to the failure of [d]efendants to warn about the dangers of Invokana"); *accord House*, 2017 WL 55876, at *4 (noting that the plaintiff's claims were "almost

identical" to the legally insufficient claims in *Fleming*, the court found "[s]o too, here," and dismissed the complaint).

*Second*, Plaintiff's claim, premised on Defendants' alleged failure to warn about a risk of DKA fails to allege facts to support a reasonable inference that Defendants knew or should have known about that risk *at the time* of Plaintiff's injury in February 2015. *See Casrell*, 335 So. 2d at 134 (noting that one affirmative defense to liability under the AEMLD is a lack of a causal relationship between the defendant's activities in handling the allegedly defective product, including defendant's lack of knowledge of the allegedly defective condition); *accord Atkins*, 335 So. 2d at 143; *see also Griggs v. Combe, Inc.*, 456 So. 2d 790, 792 (Ala. 1984) (holding product cannot be defective or unreasonably dangerous under AEMLD, where, according to factual allegations, defendant neither had knowledge nor could have developed such knowledge "by the application of reasonable, developed human skill and foresight that the product presented a danger of injury of the kind suffered by [plaintiff]") (internal quotation marks omitted). Instead, Plaintiff merely alleges, without specificity, that the FDA has received reports of DKA among users of SGLT2 inhibitors "since" Jardiance's approval, Compl. ¶ 21, and that "[a]n analysis of the FDA adverse event database" allegedly shows that "patients taking one of the SGLT2 inhibitors, including JARDIANCE, are several times more likely to report ketoacidosis" than those taking non-SGLT2 inhibitor drugs to treat diabetes. *Id.* ¶

22.  But Plaintiff does not allege how many (if any) of these reports pre-dated his alleged injury, nor does he allege when the analysis of the FDA database was performed.  In fact, under Plaintiff's own allegations, it was not until May 15, 2015—over five months *after* Plaintiff purportedly began taking Jardiance and four months *after* Plaintiff allegedly experienced DKA—that "the FDA issued a safety announcement covering the SGLT-2 inhibitor class, warning about the risk of DKA," but "advising that the FDA would continue to evaluate the safety issue." *Id.* ¶ 34.  Thus, Plaintiff has not sufficiently alleged that Defendants knew or should have known about that potential risk of DKA *before* his alleged injury.  *See, e.g.*, *Batchelor*, 2013 WL 3873242, at *3 (dismissing failure-to-warn claim where plaintiff failed to allege whether she took drug before or after FDA required black box warning concerning bone density loss); *see also Young v. Bristol-Myers Squibb Co.*, No. 4:16-CV-00108-DMB-JMV, 2017 WL 706320, at *13 (N.D. Miss. Feb. 22, 2017) (dismissing DKA-related failure-to-warn claim involving another SGLT2 inhibitor, Farxiga, because the plaintiff "has not alleged that the defendants had knowledge of the [May 15, 2015] FDA communication before the [medication the plaintiff] ingested left their control" and "has not alleged that the facts regarding ketoacidosis risk were reasonably available to the defendants through . . . investigation").

*Third*, the learned intermediary doctrine bars Plaintiff's failure-to-warn claims for two different reasons. Alabama has adopted the learned intermediary doctrine, which "imposes on a pharmaceutical company a duty to provide warnings *solely to the prescribing physician*, rather than to the patient directly." *Bodie*, 236 F. App'x at 516 (emphasis added); *see also Batchelor*, 2013 WL 3873242, at *2 (dismissing claim based on failure to warn plaintiff directly). Plaintiff's allegations that "Defendants had a continuing duty to warn *Plaintiff* of the dangers associated with JARDIANCE," Compl. ¶¶ 56, 79 (emphasis added), and that "JARDIANCE contained warnings insufficient to alert consumers, *including Plaintiff*, to the dangerous risks and reactions associated with JARDIANCE," fail to the extent that Plaintiff bases his failure-to-warn claims on a failure to warn him directly of the alleged risk of DKA. *Id.* ¶¶ 52, 75 (emphasis added). Plaintiff's remaining allegations that generically reference Defendants' failure to warn physicians and the medical community at large, *see e.g.*, *id.* ¶¶ 44, 84-85, do not contain plausible facts that Defendants failed to warn *Plaintiff's* prescribing physician of the alleged risk of DKA and should therefore be dismissed. *See, e.g.*, *Elliott v. Sandoz, Inc.*, No. 2:16-CV-00861-RDP, 2016 WL 4398407, at *7 (N.D. Ala. Aug. 18, 2016), *appeal dismissed* No. 16-16529 (11th Cir. Jan. 5, 2017) (finding learned intermediary would bar plaintiff's claim for additional reason that plaintiff did not plead "any plausible facts" to show that defendant failed to adequately warn plaintiff's prescribing

physician, including that plaintiff did not plead that prescribing physician was the target of or influenced by any "promotions, marketing, and education given to medical providers").

*Fourth*, Plaintiff's AEMLD claim is deficient to the extent that it is premised on a failure to warn about a purported risk of "stroke, heart attack, [and] severe kidney damage," Compl. ¶ 3, or a failure to warn of unnamed "other related health complications." *Id.* ¶¶ 67, 90, 116.  Plaintiff alleges only that he developed diabetic ketoacidosis and does *not* claim that he experienced stroke, heart attack, severe kidney damage, or other related health complications. *See id.* ¶¶ 4, 32.  Plaintiff's failure to tie his allegations to health complications he actually experienced is fatal to his claim, as Plaintiff has not plausibly provided "the grounds for his entitlement" to relief in this regard.  *Allain*, 2015 WL 178038, at *1.

### b.  Plaintiff Does Not State Plausible Claims For Negligence Or Gross Negligence (Counts III-IV).

To prevail on a negligence claim, "the Plaintiff must allege that the Defendant (1) breached (2) a duty, which (3) proximately caused (4) plaintiff's injury." *Miller*, 2014 WL 2155020, at *4 (quoting *E.R. Squibb & Sons, Inc. v. Cox*, 477 So. 2d 963, 969 (Ala. 1985)).  "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.  To be actionable,

that act or omission must proximately cause the injury of which the plaintiff complains." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

### i.   Plaintiff's Negligence Count Is Factually Deficient And Must Be Dismissed (Count III).

To survive a motion to dismiss in a products liability action based on negligence, the plaintiff must establish not only that the product at issue is "sufficiently unsafe so as to render it defective," but also that "the manufacturer failed to exercise due care in the product's manufacture, design, or sale." *McMahon v. Yamaha Motor Corp.*, 95 So. 3d 769, 772 (Ala. 2012). Here, Plaintiff's "catch-all" negligence claim (Count III)—which is premised on Defendants' alleged failure "to exercise ordinary care when designing, manufacturing, marketing, advertising, distributing, and selling JARDIANCE" (*see* Compl. ¶ 93)—fails for the same reasons that his AEMLD claims fail. *See supra* at 5-10.

Similarly, to the extent that Plaintiff pleads negligent failure-to-warn within his general negligence claim, these claims contain the same conclusory allegations as Plaintiff's AEMLD claims and should therefore be dismissed for failure to allege sufficient facts. *See, e.g.*, *House*, 2017 WL 55876, at *4 (dismissing negligence claim "based on the same foundation as [her] strict liability . . . failure-to-warn claims," where court found that plaintiff "failed to allege sufficient facts" in support of her strict liability failure-to-warn claims); *see also Miller*, 2014 WL 2155020, at *4 (dismissing negligence claim based on allegedly inadequate warnings, because

"the complaint provide[d] insufficient factual support to maintain such a claim"). As stated above (*supra* at 7-9), Plaintiff nowhere alleges when or how Defendants should have known of the alleged risk of DKA associated with Jardiance. Nor does Plaintiff sufficiently allege that Defendants knew or should have known about this alleged risk of DKA prior to his use of Jardiance. *See, e.g., Haney,* 528 F. Supp. 2d at 1269-70 ("[T]o establish . . . a duty to warn, [a] plaintiff must show . . . [the] defendant knew or should have known that the product could create a danger when used in its intended or customary manner.").

With respect to any alleged manufacturing defect, *see* Compl. ¶¶ 93, 97, 100-102[4], 105, 109-110, 112, Plaintiff has not provided any "meaningful factual allegations" regarding such a claim. *Weldon v. Washington Nat'l Ins. Co.*, No. 2:13-CV-02209-RDP, 2014 WL 130486, at *2 (N.D. Ala. Jan. 14, 2014) (dismissing negligence claim). Rather, Plaintiff appears to argue that, because Plaintiff allegedly suffered DKA after taking Jardiance, there must have been a manufacturing defect in the Jardiance he ingested. These allegations are insufficient, because they simply recite the elements of a manufacturing defect claim with no supporting factual allegations. *See, e.g.*, *House*, 2017 WL 55876, at *4 (dismissing negligence claims,

---

[4] Plaintiff incorrectly asserts that "Defendants were further negligent in that they manufactured and produced a defective product containing *canagliflozin* and *dapagliflozin propandiol*." Compl. ¶ 101. *Canagliflozin* (trade name Invokana) and *dapagliflozin* (trade name Farxiga) are different SGLT2 inhibitors, manufactured by different companies, that are not part of the Complaint or Plaintiff's alleged drug use.

including negligent manufacturing claims, involving SGLT2 inhibitor, Farxiga, that consisted of "largely legal conclusions that are insufficient to meet the *Twombly-Iqbal* standard").

In addition, any negligence theory premised on Defendants' alleged failure to properly design Jardiance, *see, e.g.*, Compl. ¶¶ 97, 104, 110, 112-113, fails, because Alabama law does not recognize design defect claims in cases involving prescription drugs, regardless of whether the claims are brought under the AEMLD or a different theory, such as negligence.  Alabama has adopted comment k to § 402A of the Restatement (Second) of Torts, recognizing prescription drugs as within a category of products that are "unavoidably unsafe" or "quite incapable of being made safe for their intended and ordinary use."  *Stone*, 447 So. 2d at 1303 n1.  The Restatement is unambiguous with respect to claims involving prescription drugs: "in the case of an 'unavoidably unsafe' yet properly prepared prescription drug, the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous."  *Id.* at 1304.  The Northern District of Alabama has explained that, "[b]ecause the rationale of the exception turns on the notion that prescription drugs are desirable even though they may never be made fully safe, [it] finds the exception equally applicable to design defect claims outside of the AEMLD," including negligent design claims, which also "hinge on the safety of the

product." *Barcal*, 2016 WL 1086028, at *3 (dismissing all design defect claims, including those based on a negligence theory).

Furthermore, Plaintiff has failed to plead any facts alleging how Jardiance's design was defective or how any defect in Jardiance's design caused his injuries. Plaintiff alleges that SGLT2 inhibitors "are designed to inhibit renal glucose reabsorption with the goal of lowering blood glucose" and that, as a result, "excess glucose is not metabolized, but instead is excreted through the kidneys of a population of consumers already at risk for kidney disease." Compl. ¶ 18. However, at least two federal courts confronted with this exact allegation in other SGLT2 inhibitor cases could not "reasonably infer from the generic description of SGLT2 inhibitors' mechanism of action that [the SGLT2 inhibitor at issue] was defective or unreasonably dangerous" and therefore dismissed the complaints. *House*, 2017 WL 55876, at *3-5 (quoting *Fleming*, 186 F. Supp. 3d at 835 and dismissing negligent design claim). Plaintiff does not allege how this or any other aspect of Jardiance's design supposedly increases the risk of DKA, and Plaintiff therefore fails to allege sufficient facts to support a *reasonable* inference that a defect in Jardiance's design caused his alleged injury. *See, e.g., Hughes v. Stryker Corp.*, 423 F. App'x 878, 880 (11th Cir. Apr. 14, 2011) (holding that fact of injury does not establish defect and

that, instead, a plaintiff must show that a defect in the product caused the alleged injury).[5]

Finally, any negligent design claim brought by Plaintiff fails for the additional reason that such claims are preempted by federal law. This preemption analysis applies equally to all design defect claims, whether brought pursuant to the AEMLD or under a negligence theory. *See, e.g.*, *Barcal*, 2016 WL 1086028, at *4 (dismissing design defect and negligent design claims because such claims "would essentially require [the defendant] to redesign [the drug at issue]" without FDA approval and explaining that "[t]his is precisely the kind of impossibility in which the Supreme Court has found preemption"); *see also Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 298-300 (6th Cir. 2015) (design defect claims against all pharmaceutical manufacturers are "clearly preempted by federal law"); *Fleming*, 186 F. Supp. 3d at 833 (following *Yates* and dismissing strict liability design defect and negligent design claims as preempted by federal law).

---

[5] Additionally, while Plaintiff alleges in conclusory fashion that "Consumers, including Plaintiff, who have used JARDIANCE for treatment of diabetes, have several alternative safer products available to treat the conditions," Compl. ¶ 24," he does not identify this alleged safer alternative design, nor does he explain how it would have prevented his alleged injury, further causing any negligent design claim to fail. *See, e.g.*, *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1056 (11th Cir. 1994) ("To prove defectiveness under Alabama law, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured its product.").

### ii.  Plaintiff Does Not State A Claim For Willful And Wanton Conduct Or Gross Negligence (Count IV).

Plaintiff's gross negligence count merely restates his implausible AEMLD claims, alleging that "Defendants failed to provide adequate warnings" about Jardiance's alleged side effects.  Compl. ¶ 127; *see also id.* ¶ 124.  Plaintiff's gross negligence claims should therefore be dismissed for the same reasons as his implausible AEMLD claims.  *See House*, 2017 WL 55876, at *4, (dismissing gross negligence claims, "premised on the same insufficient allegations that underpin her strict liability design defect and failure-to-warn claims").  Likewise, Plaintiff's claims for gross negligence, premised on Defendants' "complete indifference to or a conscious disregard for to [sic] the rights, safety, or welfare of others" (Compl. ¶ 120) "contain no allegations other than legal conclusions," and should therefore be dismissed.  *Stanley ex rel. L.B. v. Bullock Cty. BOE*, No. 2:07-cv-681-WHA, 2007 WL 4105149, at *5 (M.D. Ala. Nov. 15, 2007) (dismissing gross negligence, where plaintiff alleged "in conclusory fashion" that the defendants' negligence "was so egregious as to rise to gross negligence inferring malice" but provided no factual allegations regarding such conduct).

### CONCLUSION

For the reasons outlined above, Plaintiff's Complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a) and 12(b)(6) and should be dismissed in its entirety.

Dated: May 11, 2017

Respectfully Submitted,

*/s/ Ellen S. Presley*_____
Ellen S. Presley
epresley@bradley.com
F.M. Haston, III
thaston@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6000

Heidi Levine, *pro hac vice*
hlevine@sidley.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Elizabeth Curtin, *pro hac vice*
ecurtin@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendant Boehringer
Ingelheim Pharmaceuticals, Inc.*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 11, 2017 a copy of the foregoing was filed using the Court's CM/ECF system, which will send electronic notification to the following:

> Richard A. Wright
> B. Kristian W. Rasmussen
> CORY WATSON, P.C.
> 2131 Magnolia Avenue, Suite 200
> Birmingham, AL 35205
> rwright@corywatson.com
> krasmussen@cwcd.com
> ***Counsel for Plaintiff***

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

> Timothy J. Becker, Esquire
> Rolf T. Fiebiger, Esquire
> JOHNSON BECKER, PLLC
> 33 South Sixth Street, Suite 4530
> Minneapolis, Minnesota 55402
> tbecker@johnsonbecker.com
> rfiebiger@johnsonbecker.com
>
> ***Counsel for Plaintiff***

/s/ Ellen S. Presley
Of Counsel
